**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

VISUAL INTELLIGENCE LP

             Plaintiff,

v.

TELEDYNE OPTECH, INC.

             Defendant.

C.A. No. 4:13-CV-02612

**JUDGE SIM LAKE**

**JURY TRIAL DEMANDED**

**DEFENDANT TELEDYNE OPTECH, INC.'S
MOTION TO HOLD VISUAL INTELLIGENCE LP
IN CONTEMPT OF THE COURT'S MAY 4 AND JULY 29 ORDERS
AND REQUEST FOR EXPEDITED BRIEFING**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   NATURE AND STAGE OF PROCEEDINGS ................................................... 2

III.  STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

IV.  BACKGROUND ................................................................................................ 3

     A.    Optech's Deposition Requests .................................................................. 3

     B.    The Court's July 29 Order Denying VI's Motion For A Protective Order .................. 4

     C.    VI's Failure To Produce Discovery Subject to the Court's July 29 Order. ................. 4

     D.    The Court's May 4 Order And VI's Production, And Retraction, Of Mr. Peters'
         Hard Drive. ................................................................................................ 6

V.    SUMMARY OF ARGUMENT ......................................................................... 6

VI.  ARGUMENT ...................................................................................................... 7

     A.    VI Is In Contempt Of The Court's July 29 Order Because After Six Weeks, It
         Has Failed To Produce Dr. Guevara, Mr. Kern, Mr. Brown, or Mr. Smitherman
         For Deposition. ........................................................................................... 7

     B.    VI Is In Contempt Of The Court's July 29 Order Because It Failed To Provide
         A Substantive Response To Optech's Interrogatory Nos. 26 and 27. ......................... 9

     C.    VI Is In Contempt Of The Court's May 4 And July 29 Orders Because It Has
         Not Produced Documents From Leo Peters' Hard Drive. ......................................... 12

     D.    VI Should Be Sanctioned To Enforce Compliance With The Court's May 4 And
         July 29 Orders And To Compensate Optech For Costs Incurred Because Of
         VI's Contemptuous Actions. ...................................................................... 13

         i)    The Court Should Issue Sanctions To Compensate Optech For Harms
             Suffered From VI's Contemptuous Acts. ...................................................13

         ii)   The Court Should Issue Sanctions to Coerce VI's Compliance With The
             Court's Orders. ........................................................................................16

     E.    Because Summary Judgment Motions Are Due In Less Than Three Weeks, VI
         Should Be Ordered To Respond To This Motion On Shortened Time. ..................... 16

VII. CONCLUSION................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
678 F.3d 1314 (Fed. Cir. 2012) ........................................................................ 9

*Cordius Trust Co. v. Kummerfeld Assoc. Inc.*,
658 F. Supp.2d 512 (S.D.N.Y. 2009) ............................................................ 14

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) .................................................................. 9, 10

*Eulich v. United States*,
2004 WL 1844821 (N.D. Tex. Aug. 18, 2014) ............................................ 16

*Ford Motor Co. v. Wood*,
2006 WL 1581177 (W.D. La. June 6, 2006) ................................................ 13

*Int'l Union, United Mine Workers v. Bagwell*,
512 U.S. 821 (1994) ...................................................................................... 16

*Mendoza v. Regis Corp.*,
2008 WL 245176 (W.D. Tex. Jan. 29, 2008) ............................................... 13

*Petroleos Mexicanos v. Crawford Enterprises, Inc.*,
826 F.2d 392 (5th Cir. 1987) ................................................................... 13, 16

*Piggly Wiggly Clarksville, Inc. v. Mrs. Barid's Bakeries*,
177 F.3d 380 (5th Cir. 1999) ........................................................................ 3, 7

*SEC v. Lauer*,
2006 WL 2457671 (S.D.N.Y. Jan. 2006) ..................................................... 15

*Taylor v. Russell*,
181 F. Supp.2d 668 (E.D. Tex. 2001) .......................................................... 10

*United States v. United Mine Workers of America*,
330 U.S. 258 (1947) ...................................................................................... 13

## I.      INTRODUCTION

This Court has issued two orders in this case directing Plaintiff Visual Intelligence ("VI") to provide discovery.  On May 4, the Court ordered VI to produce discovery including "responsive documents from the hard drive of its former employee, Leo Peters."  (Dkt. No. 86 at 1.)  And on July 29, the Court Ordered VI to "comply promptly with Optech's outstanding discovery requests and to produce for deposition the witnesses requested by Optech."  (Dkt. No. 106 at 2.)  VI has not fulfilled its obligations under either of these Orders.

VI has not complied with the Court's July 29 Order.  After a month-and-a-half, VI still has not provided deposition dates for four individual witnesses or any of its Rule 30(b)(6) designees.  These include key witnesses, such as the lead inventor on the patents-in-suit and VI's CEO.  Nor has VI responded, as ordered, to Optech's written discovery.  For instance, when asked to identify the basis for its claim for injunctive relief, VI provided no substantive answer.

VI has not provided any explanation for its actions.  Three weeks ago, VI promised to provide deposition dates "this week."  Since then, Optech has written VI multiple times, asking VI to provide the depositions or to meet and confer.  VI ignored each request.

VI has also ignored this Court's May 4 directive to "produce responsive documents from the hard drive of its former employee, Leo Peters."  (Dkt. 86 at 1.)  VI purported to comply with this Order by producing a hard drive that it claimed to be Leo Peters'.  Yet before Optech could review the drive, VI demanded that Optech return it.  VI has persistently refused to explain the basis for that demand.  VI has also failed to make any substitute production of responsive documents from Mr. Peters or even provide a privilege log.  Optech has asked VI nearly ten times about its obligation to produce Mr. Peters' documents.  VI completely ignored each of these inquiries.  As a result, Optech has never had a chance to review the Leo Peters documents that the Court ordered produced four months ago.

1

VI's defiance of the Court's Orders is prejudicing Optech. Optech is being deprived of discovery on critical topics, such as VI's "Air Recon" prior art, financial and damages data, and information relevant to VI's disqualification motion. VI is also withholding discovery about Optech's counterclaim that VI wrongfully used and distributed Optech's confidential documents. Fact and expert discovery are now closed. Optech has had to complete its expert report and deposition without the discovery at issue here. And it is being forced to prepare its summary-judgment papers with the same lack of discovery.

Given this, VI should be held in contempt. The Court should issue contempt sanctions to correct the harm Optech has suffered and secure compliance with the Court's Orders. Having forced Optech to bring this motion, VI should be ordered to compensate Optech for its fees in bringing it. And to alleviate the litigation prejudice from VI's behavior, VI should be barred from calling its unproduced witnesses at trial. It should also be ordered to provide Optech with Mr. Peters' hard drive, produce its witnesses for deposition, and answer Optech's interrogatories.

## II.     NATURE AND STAGE OF PROCEEDINGS

This is an action for patent infringement. VI contends that Optech infringes certain claims of U.S. Patent Nos. 7,127,348 and 7,725,258 ("the patents-in-suit"). Under the Court's Second Amended Scheduling Order, fact discovery closed on July 24, expert discovery closed on September 4, and summary judgment motions are due by October 5. (Dkt. No. 85 at 2.)

On July 13, VI filed a motion to stay the remaining case deadlines pending resolution of its Motion to Disqualify Counsel. (Dkt. No. 99.) On July 15, VI filed a motion for a protective order against Optech's outstanding discovery. (Dkt. No. 100.) The Court denied those motions on July 29, ordering VI to provide Optech's outstanding discovery "promptly." (Dkt. No. 106.)

## III.    STATEMENT OF ISSUES TO BE DECIDED

This motion asks the Court to decide the following issues:

2

(1) Whether VI is in contempt of the Court's July 29 Order, directing VI to "produce for deposition the witnesses requested by Optech," when VI has not produced four such witnesses or taken steps to produce them;

(2) Whether VI is in contempt of the Court's July 29 Order, directing VI to "comply promptly with Optech's outstanding discovery responses," when VI produced incomplete and evasive interrogatory responses; and

(3) Whether VI is in contempt of the Court's May 4 Order, directing VI to "produce responsive documents from the hard drive of its former employee, Leo Peters," when VI demanded the return of the only production it made from that hard drive and refused to provide an explanation or substitute production.

The Court's decision regarding whether to hold VI in contempt, and the sanctions to be imposed on VI, is reviewed for an abuse of discretion. *Piggly Wiggly Clarksville, Inc. v. Mrs. Barid's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999).

## IV.    BACKGROUND

### A.    Optech's Deposition Requests

Under the Court's Scheduling Order, fact discovery closed on July 24.  (Dkt. No. 85 at 2.)  In advance of that date, Optech noticed depositions of key witnesses.  On May 8, Optech subpoenaed VI's lead inventor on the patents-in-suit, Chester Smitherman.  (Ex. 11, 5/8/15 Deposition Subpoena to Smitherman.)  In mid-May, Optech served two deposition notices under Fed. R. Civ. P. 30(b)(6).  (Exs. 12 and 13, Optech's Second and Third Rule 30(b)(6) Notices to VI.)  And in mid-June, after receiving VI's document production, Optech noticed depositions of several VI employees .  These included Armando Guevara (VI's CEO), Kevin Brown (VI's CFO), and Phil Kern (a senior marketing employee at VI).  (Exs. 14 - 16, 6/19/15 Dep. Notices.)

Optech spent weeks attempting to secure these depositions.  Just three days before the first deposition was to occur, VI stated that it "is not [] prepared to produce a witness [then]." (Ex. 17, 6/22/15 Email (Ross to Pieja).)  Optech asked VI three times to reschedule that deposition.  (Ex. 17, 6/23/15, 6/26/15, 7/1/15 Emails (Pieja to Ross).)  VI never responded.

3

Similarly, less than two days before another deposition was to begin, VI demanded that Optech "withdraw its deposition notices." (Ex. 17, 7/8/15 Email (Ross to Pieja).) With hours, VI recanted that demand. It then confirmed dates for two witnesses – Armando Guevara and Phil Kern. (Ex. 18, 7/10/15 Email (Pieja to Ross).) Less than 48 hours before Mr. Kern's deposition was to begin, however, VI cancelled it. (Ex. 19, 7/14/15 Email (Ross to Pieja).) Optech asked VI to explain why its position had changed. (Ex. 19, 7/14/15 Email (Pieja to Ross).) Without responding, VI filed a motion for a protective order. (Dkt. No. 100.)

**B.** **The Court's July 29 Order Denying VI's Motion For A Protective Order**

On July 29, the Court denied VI's motion for a protective order. (Dkt. No. 106.) The Court stated that "[t]he [C]ourt expects Visual Intelligence to comply promptly with Optech's outstanding discovery requests and to produce for deposition the witnesses requested by Optech." (*Id.* at 2.) At the time of the July 29 Order, Optech's outstanding discovery included:

- Depositions of five VI employees: Armando Guevara, Phil Kern, Kevin Brown, Jay Tilley, and Joe McCoy;

- Depositions of two third party witnesses represented by VI's counsel: inventor Chester Smitherman and former VI CEO R. Bradford Perry;

- Optech's Second and Third Rule 30(b)(6) Deposition Notices to VI;

- VI's responses to Optech's Fifth Set of Interrogatories; and

- VI's production and retraction of Leo Peters' hard drive.

**C.** **VI's Failure To Produce Discovery Subject to the Court's July 29 Order.**

In view of the Court's July 29 Order, Optech immediately asked VI to meet and confer to discuss the outstanding discovery. (Ex. 20, 7/29/15 Email (O'Donoghue to Ross).) Optech followed up with a letter on August 6, detailing the outstanding discovery issues. (Ex. 7, 8/6/15

4

Letter (Pieja to Ross).)  VI did not respond to Optech's August 6 letter.  Nor did it provide any

deposition dates or discovery responses.  On August 12, Optech reminded VI of the Court's

Order and its outstanding discovery.  (Ex. 21, 8/12/15 Email (Pieja to Ross).)

  Finally, on August 13, VI responded.  VI provided potential deposition dates for six

witnesses and one on-site inspection, beginning the following week.  (Ex. 21, 8/13/15 Email

(Ross to Pieja).)  VI indicated that two of its employees, Dr. Guevara and Mr. Brown, would be

its Rule 30(b)(6) designees.  (*Id.*)  Despite the short notice, Optech accepted most of VI's dates.

Due to prior commitments, including a settlement conference, Optech had conflicts with the

dates for Mr. Brown and Mr. Kern.  (Ex. 21, 8/14/15, 8/20/15 Emails (Pieja to Ross).)  Optech

also asked VI which Rule 30(b)(6) topics it was designating Dr. Guevara on.  Optech agreed to

proceed with Dr. Guevara's deposition if VI provided this information.  (Ex. 21, 8/17/15 Email

(Pieja to Ross).)  In response, VI cancelled Dr. Guevara's deposition, saying it would "provide

alternate dates" for him, Mr. Brown, and Mr. Kern.  (Ex. 21, 8/17/15 Email (Ross to Pieja).)

  Since August 20, Optech has tried in vain to get VI to provide the promised "alternate

dates," as well as any date at all for Mr. Smitherman.[1]  Optech reminded VI of the issue on

August 24.  (Ex. 9, 8/24/15 Email (Pieja to Ross).)  VI promised that it would provide the dates

"next week."  (Ex. 9, 8/24/15 Email (Ross to Pieja).)  It did not.  A week later, on August 31,

Optech reminded VI again.  (Ex. 10, 8/31/15 Email (Pieja to Ross).)  VI did not respond.  Optech

reminded VI on the record at the September 4 deposition of Optech's expert, Dana Slaymaker,

and in writing on September 8.  (Ex. 10, 9/8/15 Email (Pieja to Ross).)  Again, VI did not

respond.

---

[1] In May, Optech and VI jointly agreed to postpone Mr. Smitherman's deposition due to an urgent medical issue. (Ex. 22, 5/27/15 Email (Pieja to Ross).) In August, VI informed Optech that Mr. Smitherman had been medically cleared to appear at his deposition. (Ex. 9, 8/24/15 Email (Ross to Pieja).)  With respect to Mr. Smitherman, Optech's motion relates only to VI's behavior after Mr. Smitherman was medically cleared, not before.

     **D.**     **The Court's May 4 Order And VI's Production, And Retraction, Of Mr. Peters' Hard Drive.**

The July 29 Order was not the first Order directing VI to produce discovery.  In April and October, 2014, Optech served written discovery requests.  (Exs. 1 and 2, Optech's 1st and 2nd Set of Requests for Production.)  After months of trying to secure responses from VI, Optech moved to compel.  (Dkt. No. 68.)   On May 4, the Court ordered VI to produce, by May 22, "responsive documents from the hard drive of its former employee, Leo Peters."  (Dkt. No. 86 at 1.)

Despite this, VI apparently did not search Mr. Peters' drive for such documents.  Instead, VI chose to "forward" Mr. Peters' entire physical hard drive "directly" from the VI consultant who had it.  (Ex. 3, 5/20/15 Email and Letter (Sample to Pieja).)  Just three weeks later, however, VI demanded that Optech return this drive in its entirety.  (Ex. 4, 6/12/15 Email (Ross to Pieja).)  VI described this demand as a "follow up" on an email VI had sent relating to allegedly-privileged documents that Mr. Peters himself had produced directly.  (*Id.*)

Optech twice asked VI to explain its demand.  (Ex. 5, 6/13/15, 6/16/15 Emails (Pieja to Ross).)  VI did not respond, so Optech returned Mr. Peters' hard drive.  (Ex. 6, 6/24/15 Letter (Winnard to Ross).)  Optech also informed VI that its document vendor had previously created a forensic copy.  (*Id.*)  Given the uncertainty as to the basis for VI's clawback, Optech voluntarily sequestered the copy of Mr. Peters' hard drive and agreed not to review it.  After the Court's July 29 Order, Optech asked VI five times about Mr. Peters' hard drive. (Ex. 7, 8/6/15 Letter (Pieja to Ross).); Exs. 8 - 10, 8/17/15, 8/26/15, 8/31/15, 9/8/15 Emails (Pieja to Ross)). VI ignored Optech.

**V.**     **SUMMARY OF ARGUMENT**

VI is in contempt of both the Court's May 4 and July 29 Orders.  A finding of contempt requires Optech to prove three things: that "(1) that a court order was in effect; (2) that the order

6

required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999).  All three elements are met here.

The Court's May 4 and July 29 Orders were, and are, "in effect."  *Id.*  The July 29 Order directed VI to produce witnesses for deposition.  VI did not.  The Court ordered VI to provide the other discovery Optech requested, including interrogatory responses.  VI did not, providing no substantive answers.  And the May 4 Order required VI to produce responsive documents from Mr. Peters' hard drive.  While VI produced the drive, it then demanded its return before Optech reviewed it.  VI has provided no explanation or replacement production since.

VI's conduct underscores the need for a contempt finding.  When Optech repeatedly asked about these issues, VI, as it has on other issues, ignored Optech.  VI should be held in contempt of the Court's May 4 and July 29 Orders.

## VI.   ARGUMENT

### A.   VI Is In Contempt Of The Court's July 29 Order Because After Six Weeks, It Has Failed To Produce Dr. Guevara, Mr. Kern, Mr. Brown, or Mr. Smitherman For Deposition.

The Court's July 29 Order directed VI to "produce for deposition the witnesses requested by Optech."  (Dkt. No. 106 at 2.)   VI has not done so.  At the time of the Court's July 29 Order, Optech had seven outstanding individual depositions and two corporate deposition notices pursuant to Fed. R. Civ. P. 30(b)(6).  (Exs. 11, 12-16, 27-29, Deposition Notices and Subpoenas.) Six weeks later, VI has not produced six of the most critical witnesses – Armando Guevara, Kevin Brown, Phil Kern, Chester Smitherman, and either of its Rule 30(b)(6) deponents.

VI's actions show no meaningful attempt to comply with the July 29 Order regarding these witnesses.  It took over two weeks, and three written requests, before VI even responded to

Optech's requests on the issue.  (Ex. 20, 7/29/15 Email (O'Donoghue to Ross); Ex. 7, 8/6/15

Letter (Pieja to Ross); Ex. 21, 8/12/15 Email (Pieja to Ross).)   When VI finally responded, it

provided six deposition dates within a ten day window, beginning in less than a week.  (Ex. 21,

8/13/15 Email (Ross to Pieja).) Yet VI's then blocked Optech's ability to take some of these

depositions.  For instance, on August 13, VI proposed that Dr. Guevara be deposed individually

and as a Rule 30(b)(6) designee in one week's time.  (Ex. 21; 8/13/15 Email (Ross to Pieja).)

Optech indicated it would go forward with the deposition.  It asked only that VI identify what

topics Dr. Guevara would testify on – a prerequisite for a Rule 30(b)(6) deposition.  (Ex. 8;

8/17/15 Email (Pieja to Ross).)  Rather than provide this information, VI unilaterally decided not

to produce Dr. Guevara.  (Ex. 21; 8/17/15 Email (Ross to Pieja).)  Other of VI's proposed dates,

such as Mr. Kern's, posed irreconcilable conflicts.   (Ex. 21; 8/20/15 Email (Pieja to Ross).)

Though VI promised "alternate dates" for Dr. Guevara's and Mr. Kern's depositions in mid-

August, it never followed through, despite multiple requests.   (Exs. 9 and 10; 8/24/15, 8/31/15,

and 9/8/15 Emails (Pieja to Ross).)  And VI has never provided any deposition date for Mr.

Smitherman.

      For the past three weeks, VI has refused to even discuss the Court-ordered discovery with

Optech, despite three written requests.  (Exs. 9 and 10; 8/24/15, 8/31/15, and 9/8/15 Emails

(Pieja to Ross).)  VI has provided no explanation for its silence.  Nor could it.  Six weeks is

ample time for VI to schedule depositions of a handful of its employees and consultants.

Certainly, it is enough time for VI to meet and confer.  Yet VI has done neither.

      Optech's inability to take the outstanding depositions is prejudicing Optech.  For

instance, Dr. Guevara is VI's CEO.  He has submitted an affidavit in this matter relating to

Optech's counterclaim for tortious interference with contract.  (Dkt. No. 26, Ex. C.)  And he was

admittedly in possession of the documents at issue in that claim.  (*Id.*) Similarly, Mr.

Smitherman is the lead inventor on the patents-in-suit.  VI also designated Mr. Smitherman as its

Rule 30(b)(6) witness regarding the "Air Recon" product Optech contends is invalidating prior

art.  (Ex. 22, 5/27/15 Email (Pieja to Ross).) VI's failure to provide these depositions has

deprived Optech of discovery on these topics.  The Court should hold VI in contempt of its July

29 Order.

> **B.     VI Is In Contempt Of The Court's July 29 Order Because It Failed To
> Provide A Substantive Response To Optech's Interrogatory Nos. 26 and 27.**

VI has also failed to provide the written discovery at issue in the Court's July 29 Order.

In particular, VI failed to substantively answer at least two of Optech's Fifth Set of

Interrogatories, served on June 24, 2015.

First, VI failed to answer an interrogatory seeking the basis for VI's demand for

injunctive relief.  VI's Complaint asks that Optech "be permanently enjoined from directly or

indirectly infringing the Patents-in-Suit."  (Dkt. No. 1 at 15.)  To receive that relief, VI must

show that "it has suffered an irreparable injury" from Optech's supposed infringement.  *Douglas*

*Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1343 (Fed. Cir. 2013).  Further, VI must

show "some causal nexus between [the alleged] infringement and the alleged harm."  *Apple Inc.*

*v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1323-24 (Fed. Cir. 2012).  To attempt to

understand why VI believed these requirements were met, Optech served Interrogatory 26:

> **INTERROGATORY NO. 26:** To the extent that You contend that You are
> entitled to injunctive relief against Optech in this matter, describe with
> particularity all legal and factual bases for such a claim.

(Ex. 23, Optech's Fifth Set of Interrogatories at 3.)

VI's response to Interrogatory 26 provided nothing beyond objections:

> **RESPONSE [TO INTERROGATORY NO. 26]:** . . . Visual Intelligence
> responds that Optech has objected and has not provided discovery in response to

> Visual [I]ntelligence's discovery requests seeking to elicit information necessary
> for Visual Intelligence to formulate its contentions regarding this matter. . . .

> (Ex. 24, VI's Response to Optech's Fifth Set of Interrogatories at 8.)

This response was inadequate, and VI should have known it. VI pled its claim for injunctive

relief on September 5, 2013 and has maintained it for over two years.  All that time, it was settled

law that such a claim required a showing of "irreparable harm" and "causal nexus."  *Douglas

Dynamics*, 717 F.3d at 1343; *Apple*, 678 F.3d at 1323-24.  Assuming VI had a Rule 11 basis for

maintaining its claim for injunctive relief, it could and should have provided that basis in its

response.  VI's attacks on Optech's discovery production are unavailing.  VI never previously

raised with Optech (or the Court) any discovery issues relating to injunctive relief.  Its attempt to

conjure them up now is simply a manufactured excuse for its own failure to respond.

Beyond information relating to injunctive relief, Optech's Fifth Set of Interrogatories also

sought information relating to Optech's counterclaims.  In  particular, Optech has counterclaimed

for tortious interference with contract.  (Dkt. No. 26 at 38-41.)   To prevail on its tortious-

interference claim, Optech must show, among other things, "the occurrence of a willful and

intentional act of interference . . . [that] was a proximate cause of [Optech's] damages."  *Taylor

v. Russell*, 181 F. Supp.2d 668, 672 (E.D. Tex. 2001).  Here, Optech alleged that VI interfered

with a confidentiality agreement between Optech and a customer, US Imaging.  (Dkt. No. 26 at

38-41.)  VI did this, Optech alleges, by inducing US Imaging to disclose confidential Optech

documents to VI.  (*Id.*)  Although these documents were marked Optech confidential, VI then

distributed them to people who should not have them.  (*Id.* at 40-41.)  The damages Optech

suffered from this depend on how widely VI distributed Optech's confidential information, and

to whom.  Optech's Interrogatory 27 sought this information:

> **INTERROGATORY NO. 27:** Identify every individual that, to Your
> knowledge, has now or has had possession of any of the documents produced by

10

You at VI 000821-823 [the documents at issue in Optech's counterclaim] and explain the circumstances under which that individual came into possession of those documents . . .

(Ex. 23, Optech's Fifth Set of Interrogatories at 3.)

The information sought by Interrogatory 27 was relevant to Optech's counterclaim.  It was reasonably tailored to just three specific documents that VI had already produced.  Yet VI's answer provided no substantive information.  Instead, after objecting, VI stated:

> **RESPONSE [TO INTERROGATORY NO. 27]:** . . . See the March 13, 2014, Affidavit of Jose Armando Guevara.  Certain members of Visual Intelligence's control group responsible for managing this litigation have had access to this document as well, as well as Visual Intelligence's counsel.  Visual Intelligence believes that Optech has disclosed this document to Optech's customers and prospective customers, including U.S. Imaging . . . .

(Ex. 24, VI's Response to Optech's Fifth Set of Interrogatories at 9.)

This answer is not responsive.  Stating that "[c]ertain members of Visual Intelligence's control group" have seen the documents does not tell Optech who, exactly, has done so.  Nor does VI's reference to Dr. Guevara's 2014 affidavit help.  That affidavit states only that these documents "have only been seen within VI by employees who were necessary to work on the project [relating to US Imaging]."  (Ex. 25, Guevara Affidavit ¶ 13.)  That language does not identify anyone who had seen Optech's confidential documents.  Resolving this vagueness was one of the reasons Optech served Interrogatory 27.  And the deficiencies in VI's response were compounded by VI's refusal to make Dr. Guevara available for deposition as ordered.

As with the outstanding depositions, VI ignored multiple requests to discuss this issue. (Exs. 9 and 10, 8/24/15, 8/31/15, 9/8/15 Emails (Pieja to Ross).)  VI has provided no explanation for its behavior and should be held in contempt of the Court's July 29 Order.

11

**C.**     **VI Is In Contempt Of The Court's May 4 And July 29 Orders Because It Has Not Produced Documents From Leo Peters' Hard Drive.**

VI has also violated the Court's May 4 Order, which required VI to "produce responsive documents from the hard drive of . . . Leo Peters" by May 22. (Dkt. 86 at 1.)   Although VI may initially have complied with this Order, VI undid any compliance almost immediately.  VI never produced a set of "responsive" documents from Mr. Peters' hard drive.  The only production it made was to send Optech Mr. Peters' entire original hard drive in physical form. (Ex. 26, 5/20/15 Production Letter (Ross to Pieja).)  VI apparently did not review the drive's contents before sending it, instead shipping the drive "directly" from the VI consultant who had it.  (*Id.*)

Yet before Optech had a chance to review the drive, VI demanded that Optech "immediately return Leo Peters' hard drive." (Ex. 4, 6/12/15 Email (Ross to Pieja).)  The demand appeared designed to suggest, without saying directly, that VI may be claiming privilege over some of the drive's contents.  Specifically, VI made its demand as a "follow-up" to, and in the context of, a prior email regarding allegedly-privileged documents from Mr. Peters.  (*Id.*)

Despite knowing that its demand was preventing Optech from reviewing Mr. Peters' documents, VI has done nothing to come into compliance with the Court's May 4 Order or to clarify the basis for its clawback.  VI never made a replacement production.  It never provided Optech with a log of any privilege claims, as required by the Discovery Production Protocol. (Dkt. 21 at ¶ 6.)  VI never even stated whether it was claiming privilege over the any portion of the drive.  In fact, VI appears to be deliberately preserving ambiguity over its potential privilege claim to block Optech from reviewing drive's contents.  Optech's document vendor retains a forensic copy of Mr. Peters' hard drive.  But Optech cannot review the copy because VI refuses to clarify whether it is claiming privilege over any documents on it.  Optech asked VI about this issue on at least six separate occasions: June 13, June 16, August 6, August 17, August 26,

August 31, and September 8. (Exs. 4, 5, 7-10).  VI ignored each request.  VI's actions seem to have no purpose other than to prevent Optech from accessing the Court-ordered discovery.  VI is thus in contempt of the Court's May 4 Order.

> **D.**     **VI Should Be Sanctioned To Enforce Compliance With The Court's May 4 And July 29 Orders And To Compensate Optech For Costs Incurred Because Of VI's Contemptuous Actions.**

Given its conduct, VI should be sanctioned to secure compliance with the Court's Orders and compensate Optech for the costs it incurred because of VI's noncompliance.  Civil contempt can serve "two purposes:  to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."  *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947).  A contempt sanction can contain elements directed at either or both of these aims.  *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (5th Cir. 1987).  The nature of the sanction is within the Court's discretion: "[u]pon a finding of civil contempt, the court has complete discretion in assessing sanctions to protect the sanctity of it[s] decrees and the legal process."  *Ford Motor Co. v. Wood*, 2006 WL 1581177 at *4 (W.D. La. June 6, 2006) (citing *American Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000)).  Here, sanctions should serve both compensatory and enforcement aims.

> i)     The Court Should Issue Sanctions To Compensate Optech For Harms Suffered From VI's Contemptuous Acts.

Optech has suffered multiple types of harm as a result of VI's noncompliance.  First, Optech has incurred costs and expenses in attempting to secure VI's compliance with the Court's Orders.  These include Optech's attorneys' fees associated with preparing this motion.  Courts routinely compensate parties forced to bring motions for civil contempt by awarding them their fees and costs in prosecuting the motion.  *E.g.*, *Mendoza v. Regis Corp.*, 2008 WL 245176 at *1, *5 (W.D. Tex. Jan. 29, 2008) (awarding over $80,000 in fees incurred in litigation contempt

motion); *Cordius Trust Co. v. Kummerfeld Assoc. Inc.*, 658 F. Supp.2d 512, 526 (S.D.N.Y. 2009) (awarding $10,000 in fees incurred in litigating contempt motion). Accordingly, the Court should order VI to pay Optech's fees associated with bringing this motion.

Second, Optech has suffered prejudice in this litigation from VI's violations of the Court's July 29 Order. The July 29 Order directed VI to produce discovery "promptly." (Dkt. No. 106.) Had VI complied, Optech would have deposed VI's fact witnesses before preparing its expert for his September 4 deposition. (Dkt. No. 85 at 2.) And it would have deposed those witnesses well before the October 5 summary-judgment deadline. (*Id.*) This would have allowed Optech to prepare its expert and summary-judgment positions based on the full factual record. For instance, Optech's expert could have used Mr. Smitherman's potential testimony about the "Air Recon" prior art to prepare for his deposition on invalidity. Because of VI's noncompliance, Optech lost this chance.

VI has also gained an improper tactical advantage from its failure to produce its witnesses as ordered. VI has had a "sneak peek" at Optech's expert positions (and, soon, its summary-judgment ones). It can use that, consciously or unconsciously, to guide its deposition preparation of its remaining fact witnesses, priming them to "rebut" Optech's already-known positions. But under the Court's Orders, Optech's expert opinions and summary judgment should have been informed by VI's fact testimony, not the other way around. VI's noncompliance, if uncorrected, will also allow VI to improperly insulate its fact witnesses against important cross-examination at trial. For instance, if VI's witnesses tailor their testimony to respond to Optech's expert and summary-judgment arguments, Optech will have no pre-existing depositions to use to impeach the changed testimony.

14

To cure the improper tactical advantage VI has gained from its noncompliance, preclusive sanctions are appropriate.  For instance, in *SEC v. Lauer*, a party failed to obey an order directing him to make disclosures relating to the testimony of lay witnesses.  2006 WL 2457671, *10, n. 1[2] (S.D.N.Y. Jan. 24, 2006).  The court held the noncompliant party in contempt and precluded him from presenting any witnesses for whom timely disclosures were not made.  *Id.*  A similar remedy is appropriate here.  VI's noncompliance unfairly benefits it by impeding Optech's ability to prosecute its case and to fully cross-examine VI's deponents at trial.  VI should therefore be barred from relying on these undeposed witnesses' testimony at summary judgment or trial.

<u>Third</u>, VI's noncompliance with the Court's Orders have deprived Optech of basic information about VI's document production.  In particular, Optech has been deprived of routine discovery about where VI's produced documents came from.  The Court's May 4 Order directed VI to complete its document production by May 22.  (Dkt. No. 86 at 1.)  VI did produce some documents by that date.  Had VI obeyed the Court's other orders, Optech would then have had the opportunity to depose these documents' likely custodians, ask which documents they produced, and follow up as needed.  For instance, according to VI, Dr. Guevara gathered the documents in VI's production.  He should thus be able to explain how VI's document production is organized and who it came from.  Because VI has refused to present Dr. Guevara for deposition, however, Optech has been denied this information.  Also, the remaining VI fact depositions will now occur well after the fact-discovery deadline.  Optech will thus have no opportunity to follow up if a witness reveals that he produced documents Optech had not identified or has additional responsive documents in his possession.

---

[2] Because it encompasses two clarifying orders, the cited document contains three footnotes labeled "1"; this reference is to the last of the three.

To cure this prejudice, Optech seeks a modest corrective sanction.  VI should be required, before presenting its remaining witnesses for deposition, to identify with specificity which, if any, documents in its production came from their files.  This will provide Optech some of the information it would have had if VI had complied with the Court's Orders.

ii)   The Court Should Issue Sanctions to Coerce VI's Compliance With The Court's Orders.

The Court should also issue sanctions to force VI to comply with the Court's July 29 Order.  *See Petroleos Mexicanos*, 826 F.2d at 400.  Courts frequently impose daily fines on parties who fail to obey discover orders to serve just this purpose.  *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829-830 (1994).   These fines are often used to coax compliance with a Court order by continuing them indefinitely until the order is followed.  *E.g.*, *Eulich v. United States*, 2004 WL 1844821, *6 (N.D. Tex. Aug. 18, 2004) (ordering a fine of $5,000 per day, rising to $10,000 per day).  Here, VI has refused to produce Dr. Guevara, Mr. Smitherman, Mr. Kern, and Mr. Brown for deposition, to answer Optech's interrogatories, or to produce Mr. Peters' hard drive, despite the Court's Orders and multiple requests from Optech.  Optech respectfully requests that the Court direct VI to pay the Court $1,000 per day, commencing one week after the Court's resolution of this motion and continuing until VI has complied with any order issued by the Court regarding this motion.

**E.     Because Summary Judgment Motions Are Due In Less Than Three Weeks, VI Should Be Ordered To Respond To This Motion On Shortened Time.**

To allow Optech to use the discovery required by the Court's July 29 Order to prepare its summary-judgment papers, VI should be ordered to respond to this motion within one week. Under the Court's Scheduling Order, motions for summary judgment are due in less than three weeks, on October 5.  (Dkt. No. 85 at 2.)  Under Civil Local Rule 7.3, however, VI's opposition to this motion would not be due for 21 days, or on October 8.  (Civ. L. R. 7.3).  Optech would be

16

prejudiced if it were forced to submit its summary-judgment papers on that schedule.  For example, Optech would not have Mr. Smitherman's testimony regarding the Air Recon prior art to support any summary-judgment motion on invalidity.  Similarly, Optech would be forced to file summary judgment on remedies issues without discovery as to the bases for VI's request for injunctive relief.

Requiring VI to respond within one week of this motion would allow briefing to be completed before summary judgment papers are due.[3]  And VI would suffer no undue prejudice from expedited briefing.  The issues presented here are straightforward: has VI complied with the Court's Orders and, if not, what sanctions should the Court order.  In addition, the urgency of Optech's motion is the result of VI's own, prolonged, refusal to provide discovery or to respond to Optech.  A one-week response deadline is appropriate.

## VII.    CONCLUSION

VI has not followed the Court's orders directing it to produce witnesses for deposition and provide written discovery.  These failures have prejudiced Optech's preparation of its case.  The Court should hold VI in contempt of the Court's May 4 and July 29 Orders and order it to respond fully to Optech's interrogatories; produce Dr. Guevara and Messrs. Smitherman, Brown, and Kern for deposition and identify in advance the documents produced from each witness' files; produce Mr. Peters' hard drive; and pay Optech's fees for bringing this motion.  The Court should also bar VI from relying on the testimony of any witnesses that have not yet been deposed and impose a daily fine upon VI if it fails to comply.

---

[3] If Optech's request for expedited briefing is granted, Optech agrees to file any reply brief within two business days of VI's opposition.

Dated:  September 17, 2015       **GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP**

*/s/ Brian P. O'Donoghue*
Brian P. O'Donoghue
Attorney-in-Charge
(*Pro Hac Vice*)
**GOLDMAN ISMAIL TOMASELLI
    BRENNAN & BAUM LLP**
564 W. Randolph Street, Suite 400
Chicago, Illinois 60661
Phone: 312-881-5980
Facsimile: 312-881-5191
bodonoghue@goldmanismail.com

Robert H. Reckers
Texas State Bar No. 24039520
S. D. Texas Bar No. 35685
**SHOOK, HARDY & BACON L.L.P.**
600 Travis Street, Suite 1600
Houston, Texas 77002
Phone: 713-227-8008
Facsimile: 713-227-9508
rreckers@shb.com

*Attorneys Defendant for Optech, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served this 17th day of September, 2015, by the Court's electronic document filing system, upon all counsel of record.

/s/ *Michael T Pieja*
Michael T. Pieja (*pro hac vice*)